SASAKI et al., Appellants,

v.

McKINNON et al., Appellees.

[Cite as *Sasaki v. McKinnon* (1997), 124 Ohio App.3d 613.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71941.

Decided Dec. 29, 1997.

*Murray & Murray Co., L.P.A., Dennis E. Murray, Jr.,* and *David D. Yeagley, Sandusky; Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., Robert P. Sugarman, Jeffrey S. Abraham,* and *Elaine S. Kusel; Finkelstein & Associates, Howard D. Finkelstein, Jeffrey R. Krinsk,* for appellant Ernest Sasaki.

*Ralph E. Cascarilla,* for appellee Porter McKinnon.

*Chester, Willcox & Saxbe* and *Richard A. Talda,* for David Dean.

*Andrew Heaton* and *Thomas L. Reisenberg,* Assistant General Counsel; *Vorys, Sater, Seymour & Pease, David S. Cupps, John Winship Read* and *David J. Tocco,* for appellee Ernst & Young.

*Reminger & Reminger* and *Nicholas J. Milanich,* for Theodore Ursu III.

---

JAMES D. SWEENEY, Chief Justice.

Plaintiffs-appellants Ernest Sasaki, Kenneth Sano, and David Yamada appeal from the granting of defendant-appellee Ernst & Young's [1] ("E & Y") motion to stay litigation pending arbitration. For the reasons adduced below, we affirm.

A review of the record on appeal indicates that this case involves a shareholders' derivative action pursuant to Civ.R. 23.1, brought by plaintiffs, who are shareholders of ABS Industries, Inc., [2] on behalf and for the benefit of ABS and its shareholders. E & Y, an international accounting firm, was retained to serve as outside auditor of ABS. Plaintiffs allege in their complaint that they sustained economic harm when E & Y "failed to detect or disclose * * * accounting improprieties and resulting material overstatements of ABS's performance and condition as reflected in both audited and other periodic financial statements." In short, plaintiffs allege accounting fraud in their causes of action, which include the following, for which money damages are sought: breach of contract, malpractice, negligent misrepresentation, and contribution and indemnity.

Upon being served with discovery requests, E & Y moved to stay litigation of the plaintiffs' derivative claims pending arbitration pursuant to a provision in the December 21, 1995 retention letter, which was entered into between E & Y LLP and William McCarthy, in his corporate capacity. [3] The retention letter provides the following at paragraph 11:

"*Any controversy or claim* arising out of the services covered by this letter or heretofore or hereafter provided by us to the Company (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of the Company or of Ernst & Young LLP) *shall be submitted first to voluntary mediation,* and if the mediation is not successful, *then to binding arbitration,* in

---

1. Ernst & Young refers to Ernst & Young and its successor, Ernst & Young LLP (a limited liability partnership formed in 1994 under the law of the state of Delaware).

2. ABS Industries, Inc. will be referred to as "ABS."

3. McCarthy was the president and chief executive officer of ABS.

accordance with the dispute resolution procedures set forth in Exhibit I to this letter. Judgment on any arbitration award may be entered in any court having proper jurisdiction." (Emphasis added.)

The trial court, using a half-sheet status form, granted a stay of proceedings by order journalized on December 23, 1996.

This timely appeal followed presenting six assignments of error.

### I

"The trial court erred by staying the plaintiffs–shareholders' derivative claims against ABS' former auditors and instead ordering arbitration."

Resolution of this appeal involves the application of the Ohio Arbitration Act, which is set forth at R.C. 2711.01 *et seq.* R.C. 2711.01(A) provides, generally, that provisions in a written contract containing an arbitration clause for settling disputes arising under the contract *"shall be valid, irrevocable, and enforceable,* except upon grounds that exist at law or in equity for the revocation of any contract." (Emphasis added.) R.C. 2711.02 further provides:

"If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, *upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement,* provided the applicant for the stay is not in default in proceeding with arbitration. An order under this section * * * is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code." (Emphasis added.)

In *Krafcik v. USA Energy Consultants, Inc.* (1995), 107 Ohio App.3d 59, 667 N.E.2d 1027, this court, citing *Didado v. Lamson & Sessions Co.* (1992), 81 Ohio App.3d 302, 304, 610 N.E.2d 1085, 1087, reasoned:

"A clause in a contract providing for dispute resolution by arbitration should not be denied effect unless it may be said with positive assurance that the subject arbitration clause is not susceptible to an interpretation that covers the asserted dispute. *Independence Bank v. Erin Mechanical* (1988), 49 Ohio App.3d 17, 550 N.E.2d 198; *Gibbons–Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 517 N.E.2d 559. In examining such a clause, a court must bear in mind the strong presumption in favor of arbitrability, and any doubts should be resolved in favor of coverage under the arbitration clause. *Siam Feather & Forest Prod. Co., Inc. v. Midwest Feather Co.* (S.D.Ohio 1980), 503 F.Supp. 239, affirmed

(C.A.6, 1981), 663 F.2d 1073; *Gibbons–Grable Co., supra; Independence Bank, supra.*"

See, also, *St. Vincent Charity Hosp. v. URS Consultants, Inc.* (1996), 111 Ohio App.3d 791, 677 N.E.2d 381.

In this assignment, appellants argue that (1) a shareholder's derivative action should not, as a matter of law, be subject to arbitration; (2) ABS is not bound to arbitrate, hence the derivative representatives are not bound to arbitrate, because McCarthy's alleged self-interest disabled him from acting for ABS, even though he was the president/chief executive officer of ABS at the time the retention letter's terms were accepted by ABS; and (3) E & Y cannot enforce the arbitration provision because E & Y circumvented ABS's audit committee, thereby causing E & Y to compromise its role as an independent audit voice and became an adversary of its client, ABS.

As to the first subargument presented by appellants, it is urged that the arbitration proceeding is not adequate to implement or protect the procedural safeguards contained in Civ.R. 23.1. We note that appellants provide no established authority in this state for this proposition. Reviewing the precepts of R.C. 2711.01 *et seq.*, which are stated in mandatory terms that favor the application of arbitration, we cannot divine an intention to exempt shareholders' derivative actions from application of that chapter. Neither can we accept appellants' suggestion that a panel of arbitrators would be ill-equipped to deal with the issues, which implies that the trial court or a jury would do a better job at evaluating the evidence and applicable law. To the contrary, it would appear that in matters of complex litigation involving securities and investments, a panel of arbitrators versed in the issues common to that industry is better suited to review the litigation than a general jurisdiction trial court or a jury panel drawn from the general population, which is, more likely than not, untrained in the intricacies of the financial markets, sophisticated corporate accounting and their governing regulations. This argument is not persuasive.

The second subargument attacks the authority of the president/chief executive officer to bind ABS to the accounting contract. The basis for this subargument is appellants' speculation that McCarthy was plotting with E & Y to cover up the alleged financial misrepresentations at ABS that furthered McCarthy's personal economic interests to the detriment of ABS shareholders. Speculation does not alter the fact that a president/chief executive officer has, at the very least, the apparent authority to bind the corporation which employs his or her services when negotiating the services contemplated by the retention of E & Y. See *Master Consol. Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 575 N.E.2d 817 (two-part standard of review for determining whether apparent

authority of an agent demonstrated); *Stocker v. Castle Inspections, Inc.* (1995), 99 Ohio App.3d 735, 651 N.E,2d 1052 (apparent authority of agent binds the principal to enforce a clause in a contract for arbitration). Further, the record, on its face, does not support the theory that the retention of E & Y was not in the best interest of ABS or somehow particularly favored E & Y.

The third subargument is equally without merit. While ABS did maintain an audit committee, and the retention letter did mandate that E & Y, after the acceptance of the letter, would report to the ABS audit committee regarding the conduct and results of the audit, there is no evidence to suggest that E & Y could not negotiate directly with the president/chief executive officer of ABS for the contracting of accounting services. The insertion of an arbitration clause into the services agreement between ABS and E & Y does not affect the duties of E & Y during the audit to report to the ABS audit committee regarding the conduct and results of the audit. Instead, this arbitration clause affects disputes which would arise subsequent to the completion of the services provided under the retention letter.

The first assignment of error is overruled.

## II

"The trial court erred by staying plaintiff's discovery requests, and thereby ordered arbitration on an incomplete record."

A review of the record on appeal discloses that plaintiffs did serve discovery requests on the defendants upon the filing of the underlying complaint. However, the record discloses that while the motion to stay proceedings was pending, plaintiffs did not seek to have the court delay ruling on the motion to stay until the discovery requests were complied with. Accordingly, the plaintiffs-appellants' waived any error therein. Furthermore, plaintiffs-appellants' cite no authority that compels a trial court to allow discovery prior to entertaining a motion to stay proceedings pending arbitration. The Ohio Arbitration Act, which strongly favors arbitration, compels the court to review the arbitration clause at issue and, if the court is satisfied that the dispute or claim is covered by the arbitration clause, give effect to the clause and stay the proceedings pursuant to R.C. 2711.02.

The second assignment of error is overruled.

## III

"The trial court erred by failing to require the parties moving to stay litigation pending arbitration to carry their burden of proof of proving the enforceability of the arbitration provision and establishing all predicate facts."

■ In this assignment, appellants argue that the trial court, apart from interpreting the written arbitration clause itself, should also have accepted as true the allegations contained in the plaintiffs' pleading and papers in determining whether the motion to stay should have been granted pursuant to R.C. 2711.02.

■ It is an elementary proposition that the burden of proof in any motion hearing rests, initially, with the party seeking relief or a remedy. There is no requirement to look to the allegations contained in the pleadings as in the case of a motion to dismiss a complaint pursuant to Civ.R. 12, which is essentially sought by appellants. R.C. 2711.02 only requires that when an arbitration stay is requested, the trial court must review the arbitration clause and determine its applicability to the claim. There is no requirement to look to the allegations contained in the pleadings as in the case of a motion to dismiss a complaint pursuant to Civ.R. 12. However, contrary to appellants' assertions, E & Y submitted documentary evidence and affidavits in addition to the retention letter, which allowed the court to conclude that the arbitration provision should be enforced. As previously stated, the court is not required to look beyond the written contract unless the contract may be voided on grounds common to the revocation of any contract, R.C. 2711.01(A) and 2711.02, but in this case the court had before it sufficient documentary evidence to conclude that E & Y met its burden of proof and that the contract should not have been revoked based on the facts presented to the court by the parties. The third assignment of error is overruled.

## IV

"The trial court erred by failing to make specific findings of fact and conclusions of law in support of its decision staying litigation pending arbitration, thereby impeding appellate review."

■ In this assignment, appellants argue that the trial court was required to prepare findings of fact and conclusions of law in ruling on the motion to stay proceedings pending arbitration. Appellants rely upon *Divine Constr. Co. v. Ohio–Am. Water Co.* (1991), 75 Ohio App.3d 311, 599 N.E.2d 388, which appellants misconstrue. In *Divine,* the defendant-appellant, who opposed arbitration of the matter, had made a request for a jury on the issue of the formation of a disputed contract containing an arbitration clause, but the court determined the issue of contract formation at a non-oral hearing. In *Divine,* at 317, 599 N.E.2d at 392, the court noted the existence of a jury on the issue and held that the trial court "was required to make specific findings pursuant to a trial regarding the existence of the contract." Civ.R. 52 provides that findings of fact and conclusions of law be made by a trial court only when questions of fact are tried by the

court without a jury and a party requests such findings and conclusions. In the case *sub judice*, appellants-shareholders made no jury demand to the trial court, nor did plaintiffs-appellants request findings of fact and conclusions of law from the trial court. Plaintiffs-appellants having failed to comply with Civ.R. 52, the court was not bound to prepare findings of fact and conclusions of law.

The fourth assignment of error is overruled.

## V

"Even assuming the enforceability of the arbitration provision, the trial court erred by ordering arbitration of claims asserted against a third party, E & Y, an entity which was not a party to the arbitration clause."

■ Appellants argue that the terms of the retention letter bind only ABS and E & Y LLP, and not E & Y. As previously noted above, at footnote 1, E & Y LLP is the successor entity to E & Y. Technically, appellants are correct that predecessor E & Y is not a named party to the contract. However, this distinction is minimal. These two entities, E & Y and E & Y LLP are, but for the corporate change to a limited liability partnership designation, the same entities for all practicable intents and purposes. Pursuant to the discretion of the trial court, the court could stay the proceedings even where one party is not a party to the contract. *Richard L. Bowen & Assoc. v. 1200 W. 9th St., Ltd. Partnership* (Oct. 24, 1991), Cuyahoga App. No. 61573, unreported, at 12–13, 1991 WL 221996.

The fifth assignment of error is overruled.

## VI

"Even assuming the enforceability of the arbitration provision, the trial court erred by ordering arbitration of equitable claims, which lie clearly outside the terms of the arbitration clause."

■ Appellants argue that because the shareholders' claims are allegedly equitable in nature, having been based on a derivative action, and the retention letter provides that the arbitrators may not award "equitable relief," the equitable claims cannot be forced to go to arbitration. This argument is without merit.

While the claims may be based on equitable principles, the relief sought, to wit, money damages, is not an equitable remedy. It is only equitable *relief* which is unavailable to the arbitrators, who have within their power the ability to award monetary damages. Furthermore, whether the claims are equitable or not is irrelevant. What is relevant is whether the claims are the types of disputes

which the parties have agreed to arbitrate pursuant to the written contract. Finally, the terms of the dispute resolution procedures attached to the retention letter leave the power to determine the extent to which a particular dispute is subject to the arbitration clause in the hands of the arbitrators. [4]

The sixth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

O'DONNELL and KARPINSKI, JJ., concur.

---

4. The dispute resolution procedures provide, at 1, under the heading "Arbitration," the following:

"Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, * * * shall be governed by the Federal Arbitration Act and resolved by the arbitrators."