DECISION AND JUDGMENT ENTRY JUDGMENT ENTRY
{¶ 1} Refrigerated Construction Services, Inc. ("RCS") appeals the Pike County Court of Common Pleas decision denying its motion to stay the proceedings pending arbitration. RCS contends that the trial court erred by finding that the contract between RCS and Ritchie's Food Distributor, Inc. ("Ritchie") did not include an arbitration clause. Because the contract is ambiguous, and because some competent, credible evidence supports the trial court's determination that the parties did not intend to include the arbitration clause in the contract, we disagree. RCS also contends that the trial court erred in refusing to enforce the arbitration clause because Ritchie did not demonstrate that its agreement to the arbitration clause was induced by fraud. Because we affirm the trial court's determination that Ritchie did not assent to the arbitration clause at all, Ritchie did not need to demonstrate fraud. Accordingly, we overrule RCS's assignments of error and affirm the judgment of the trial court.
 I {¶ 2} In 1999, RCS and Ritchie entered into a construction contract for RCS to construct a refrigerated warehouse in Pike County, Ohio. Under the contract, Ritchie agreed to pay RCS approximately $1,400,000 for the warehouse. Ritchie made progress payments as RCS completed work, and actually paid RCS more than the original $1,400,000 contract price. However, after RCS completed the project, Ritchie refused to pay $40,000 of RCS's final bill, claiming that there were problems with the construction of the building.
 {¶ 3} RCS demanded that the dispute be submitted to arbitration pursuant to an arbitration clause contained at paragraph 9.10.4 of the contract. Ritchie responded by filing a complaint for breach of contract and a motion to enjoin the arbitration in the trial court. RCS filed a motion to dismiss the complaint or stay the proceedings pending arbitration under R.C.2711.02. After review, the trial court determined the contract is ambiguous with regard to whether the parties intended to agree to the arbitration clause. The court overruled RCS's motion to dismiss and enjoined the arbitration. RCS then filed a motion to vacate the order or to stay the proceedings pending appeal. The trial court held a hearing and overruled RCS's motion.
 {¶ 4} RCS appealed to this court. We determined that the trial court had not yet issued a final ruling on whether an arbitration clause exists between the parties. Accordingly, we dismissed the appeal for lack of a final appealable order. We remanded to the trial court with instructions for the court to (1) hold an evidentiary hearing to resolve the factual questions concerning the very existence of an agreement to arbitrate, and (2) issue a final ruling on RCS's motion for a stay. Ritchie'sFood Distributor, Inc. v. Refrigerated Constr. Sers., Inc., Pike App. No. 02CA683, 2002-Ohio-3763.
 {¶ 5} The trial court held a hearing and received testimony and exhibits. The evidence at the hearing revealed that RCS provided a construction industry form, which RCS procured from the American Institute of Architects, for the parties to use as their contract. At the top of the contract, RCS designated Ritchie as the "Owner," RCS as the "Contractor," and "Ritchie's Food Distributor" as the "Project." Under "Architect," RCS filled in "N/A."
 {¶ 6} Representatives of Ritchie and RCS initialed each page of the agreement and signed the final page of the agreement. Predictably, a form created by the American Institute of Architects provides prominently for an architect's role throughout the contract. In particular, Article 9 of the contract is entitled "ARCHITECT'S ADMINISTRATION OF THE CONTRACT." Article 9 details requirements that the Architect approve all work, changes to the agreement, and bills for progress payments. Additionally, section 9.10 of Article 9 relates to claims and disputes, and subsection 9.10.1 provides that claims and disputes shall initially be referred to the Architect, then to mediation. Subsection 9.10.4 provides that claims not resolved by mediation shall be decided by arbitration.
 {¶ 7} Based upon Mr. Ritchie's testimony and the exhibits it received at the hearing, the trial court concluded that the parties did not intend for the provisions of the contract relating to the Architect to bind them. The court further determined that this intention extended to exclude subsection 9.10.4 from the scope of the parties' intended agreement. Therefore, the trial court determined that Ritchie is not contractually required to submit to arbitration, and overruled RCS's motions.
 {¶ 8} RCS timely appeals, asserting the following assignments of error: "I. The trial court erred by finding the parties did not contract to arbitrate their disputes. II. The trial court erred by not staying the action pursuant to R.C. 2711.02."
 II {¶ 9} When parties to a contract have agreed in writing to arbitration of disputes, the trial court must, upon application of a party and being satisfied that the issue is referable to arbitration, stay its proceedings pending the arbitration. R.C.2711.02(B). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit * * *." Council of SmallerEnterprises v. Gates, McDonald Co., 80 Ohio St.3d 661, 666-67,1998-Ohio-172; Divine Constr. Co. v. Ohio American Water Co.
(1991), 75 Ohio App.3d 311, 316. If the party challenging arbitration has not agreed to arbitration by contract, there is a presumption against arbitration. Bell v. Everen Securities,Inc. (Feb.2, 2000), Summit App. No. 19581, citing Council ofSmaller Enterprises at 667.
 {¶ 10} Until the existence of an agreement to arbitrate is established, "[o]ur inquiry is `"strictly confined" * * * to whether the parties agreed to submit disputes * * * to arbitration.'" (First alteration original.) Council of SmallerEnterprises at 668. General contract principals apply to the determination of whether the parties agreed to an arbitration clause. Id. at 668; Divine Constr. Co. at 316; Bell, supra. After the existence of an agreement to arbitrate is established, there is a strong presumption in favor of arbitration, and any ambiguities or doubts regarding the scope of the arbitration clause are resolved in favor of arbitration. Sasaki v. McKinnon
(1997), 124 Ohio App.3d 613, 616; Gaffney v. Powell (1995),107 Ohio App.3d 315, 320.
 {¶ 11} General contract law holds that a court must interpret a contract so as to carry out the intent of the parties. FosterWheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth. (1997), 78 Ohio St.3d 353; Skivolocki v. East Ohio GasCo. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Shifrin v.Forest City Ents., Inc. (1992), 64 Ohio St.3d 635; Kelly v.Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. A court must construe a contract against its drafter. Cent. Realty Co. v. Clutter (1980), 62 Ohio St.2d 411.
 {¶ 12} If the contract's terms are unambiguous, a court may not interpret the contract in a manner inconsistent with those terms. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241. Contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible to more than one interpretation.U.S. Fid. Guar. v. Aultman St. Elizabeth Med. Ctr. (1999),129 Ohio App.3d 45, 55. When the court finds an ambiguity in a contract, the court may look to extrinsic evidence to determine the parties' intent. U.S. Fid. Guar. at 55-56.
 {¶ 13} If a contract is clear and unambiguous, then its interpretation is a matter of law that we review de novo.Nationwide Mut. Fire. Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108. However, if the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact.Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC (2000),138 Ohio App.3d 57, 74. We will not reverse a factual finding of the trial court so long as some competent, credible evidence supports it. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, at syllabus.
 {¶ 14} RCS asserts that we should review the trial court's decision under a de novo standard of review. Additionally, RCS contends that the trial court should not have considered extrinsic evidence regarding the parties' intent. However, the trial court found that the agreement is ambiguous on its face with regard to whether the parties intended to agree to subsection 9.10.4. We agree that the contract is ambiguous as a matter of law. Specifically, because the contract listed "N/A" under the architect designation, but the parties did not strike the numerous contract provisions regarding the architect, the contract is reasonably susceptible to more than one interpretation. Thus, the trial court did not err in receiving extrinsic evidence regarding the parties' intent, and we will affirm the trial court's determination if some competent, credible evidence supports it.
 {¶ 15} Ritchie's president, James P. Ritchie, testified that he and RCS deliberately did not name an architect, and that his understanding was that the architect provisions of the contract were not applicable. Ritchie also testified that the parties did not adhere to the provisions of the contract relating to an architect, such as those requiring an architect's certification before progress payments became due. Ritchie made payments to RCS throughout the performance of the contract despite the fact that no architect issued certificates for payment as required under Article 9 of the contract. Ritchie also paid RCS for additional work that became necessary during RCS's construction of the building without an architect's approval or certification. RCS stipulated at the hearing that the parties did not intend to designate an architect, and that no architect was involved in the execution of the contract.
 {¶ 16} Although RCS agrees generally that the references to the "Architect" are not applicable to the contract, RCS nonetheless contends that subsection 9.10.4 applies. In support of this contention, RCS cites the general rule of law that "in the face of a valid arbitration clause, questions regarding the validity of the entire contract must be decided in arbitration."Wilharm v. M.J. Constr. Co. (1997), 118 Ohio App.3d 531,534-535. RCS also cites R.C. 2711.01(a) for the principle that "[a] provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." RCS contends, therefore, that the trial court erred in failing to consider the arbitration clause in isolation in order to ascertain its validity. RCS employs the same line of reasoning to assert that, in order to defeat a motion to stay litigation pending arbitration, the opposing party must demonstrate by clear and convincing proof that the arbitration clause itself, and not merely the contract in general, was fraudulently induced.
 {¶ 17} RCS's arguments fail because they presume the existence of a valid agreement to arbitrate. As we noted above, "arbitration is a matter of contract." Council of SmallerEnterprises at 666. Unless and until the existence of an agreement to arbitrate is established, the court's analysis must be confined to ascertaining the parties' intent under general contract principles. Id. at 668.
 {¶ 18} Here, the written contract is ambiguous, as it is not clear that the arbitration clause is part of the parties' contract. The provision at issue, subsection 9.10.4, is contained within Article 9, entitled "ARCHITECT'S ADMINISTRATION OF THE CONTRACT." RCS filled in the space at the top of the contract for the designation of an architect with "N/A." Thus, a reasonable interpretation of the contract would be that any provision relating to an architect is not applicable to the parties agreement. Although subsection 9.10.4 does not contain the word "architect" in the first sentence, it indirectly refers to the architect by describing claims subject to arbitration as those "not resolved by mediation," as provided for in subsection 9.10.1. Thus, it would be reasonable to interpret the parties' agreement as excluding all of Article 9, including subsection 9.10.4.
 {¶ 19} Mr. Ritchie testified that his understanding of the written agreement, based upon the "N/A" listed under the architect designation, was that none of the architect provisions applied to his contract with RCS. Additionally, Mr. Ritchie presented evidence that the parties did not adhere to the provisions of the contract relating to an architect, and in particular did not adhere to any of the provisions of Article 9. RCS did not present any testimony or exhibits to the contrary.
 {¶ 20} As we stated above, we agree as a matter of law with the trial court's determination that the contract is ambiguous on its face. Additionally, we find that Mr. Ritchie's testimony constitutes some competent, credible evidence that the parties did not reach an agreement to arbitrate disputes arising under the contract. Therefore, we find that the trial court did not err in denying RCS's motion to stay the proceedings pending arbitration.
 {¶ 21} Accordingly, we overrule both of RCS's assignments of error, and we affirm the judgment of the trial court.
Judgment affirmed.
Abele, J., concurs in judgment and opinion.
Evans, J., not participating.
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Evans, J.: Not Participating.